IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MERIA JAMES BRADLEY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-16-1425 |
| | § | |
| LORIE DAVIS, DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 16) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, the response, the claims raised by Petitioner in his § 2254 Application and Memorandum in support, the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 16) be GRANTED, and that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

**I.    Introduction and Procedural History**

Meria James Bradley ("Bradley") is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as a result of a 2013 felony conviction for possession of cocaine in the 183rd District Court of Harris County, Texas, cause no. 132892701010,

for which he was sentenced to thirty five (35) years imprisonment. On March 14, 2012, Bradley was charged by indictment with the offense of possession of cocaine with intent to distribute, with the indictment alleging two prior felony offenses for enhancement purposes. Bradley pled not guilty and proceeded to trial. On February 6, 2013, a jury found Bradley guilty of the lesser offense of possession of cocaine, and the trial court, upon Bradley's plea of true to the enhancement paragraphs, sentenced Bradley to thirty five (35) years incarceration.

Bradley appealed his conviction. On February 25, 2014, Texas' First Court of Appeals affirmed the conviction in an unpublished opinion. *Bradley v. State*, No. 01-13-00133-CR (Tex. App. – Houston [1st Dist.] February 25, 2014). Bradley thereafter did not file a petition for discretionary review, despite being given an extension of time to do so. Instead, Bradley filed, prior to the conclusion of his direct appeal, two state applications for writ of habeas corpus. They were both dismissed as premature. Bradley then, on August 5, 2014, filed a third state application for writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals without written order on March 23, 2016. This § 2254 proceeding, filed by Bradley on or about May 16, 2016, followed.

Respondent has filed a Motion for Summary Judgment (Document No. 16), to which Bradley filed a response in opposition (Document No. 23). This § 2254 proceeding is ripe for ruling.

**II.     Factual and Evidentiary Background**

The factual and evidentiary background, as set forth by Texas' First Court of Appeals in affirming Bradley's conviction, is as follows:

> After observing Bradley sell crack cocaine to known drug users and conducting a controlled buy at the home, Officer Nash of the Houston Police Department obtained a search warrant for the house at 7844 Sandy Street. When they executed a search warrant and entered the home, police officers found Bradley

2

running to the back of the house. Bradley's son was also present at the house at the time.

Officer Nash Testified that Bradley told him that "everything" in the house was his and that his son had nothing to do with anything illegal. Officer Nash told Bradley to show him where everything was, and Bradley showed him marijuana and crack cocaine located inside of a desk in the house. Police found a plate with a razor blade, used for cutting crack cocaine, and individually-cut crack cocaine rocks inside of the desk. The cocaine rocks altogether weighed 4.2 grams and were sized for sale. Police also found numerous weapons and "over a hundred documents," such as mail and awards on the wall, bearing Bradley's name.

Bradley testified that he owned the home at 7844 Sandy, but that he lived across the street and rented the home at 7844 Sandy to Alexander Guidroz. Bradley testified that on the day he was arrested, he and his son had walked across the street from their home to 7844 Sandy – carrying a briefcase containing paperwork – to collect rent from Guidroz and give his son a car that was located at 7844 Sandy. According to Bradley, he and his son were sitting on the porch and he was going through documents in the briefcase when the police arrived. And Bradley claimed that he showed the police the hidden drugs only after Guidroz told Bradley where the drugs were located. Bradley testified that there were no documents with his name in the house and that police actually found the documents in his briefcase.

*Bradley v. State*, No. 01-13-00133-CR at 2-3.

### III. Claims

Premised on allegations that one of his prior convictions used for enhancement purposes was for theft, not aggravated robbery, and that the search warrant obtained by Officer Nash was based on false information in Officer Nash's affidavit, Bradley claims:

(1) that the trial court's enhancement of his sentence was based on false information about his prior conviction;

(2) that the trial court erred in failing to suppress evidence which was obtained with an improperly obtained search warrant;

(3) that his trial counsel was ineffective for: (a) failing to use and rely on photographic evidence that would have shown the falsity of Officer Nash's search warrant affidavit; (b) failing to obtain, through discovery, Officer Nash's search warrant affidavit; and (c) failing to vigorously litigate the

3

>           motion to suppress; and
>
> (4)       that the prosecution engaged in misconduct during and in relation to the Grand Jury proceedings when it used Officer Nash's false search warrant affidavit and offered evidence of Bradley's extraneous offenses.

Bradley also, unrelatedly, maintains that his trial counsel was ineffective for failing to formulate a viable defense based on Alexander Guidroz' possession of the cocaine, and that his appellate counsel was ineffective for failing to provide him with a copy of the appellate brief, and failing to raise meritorious claims on appeal. In support of all his claims, Bradley argues that the Texas Court of Criminal Appeals' rejection of his claims, without any specific written findings of fact and/or conclusions of law, constitutes an unreasonable application of federal law. Respondent, in the Motion for Summary Judgment, argues to the contrary – that the Texas Court of Criminal Appeals' rejection of Bradley's claims is not contrary to, or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding(s).

### IV.     Standard of Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the

5

evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-787 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 131 S.Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ( "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004). A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s). *Cullen*, 131 S.Ct. at 1402 (quoting *Richter*, 131 S.Ct. at 784)).

V. **Discussion**

As an initial matter, Bradley's complaints about the state habeas proceedings and the absence of any findings of fact and/or conclusions of law neither implicates any federal constitutional right, nor provides support for any of Bradley's substantive claims. That is because "'infirmities in state

7

habeas proceedings do not constitute grounds for relief in federal court,'" *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001), *cert. denied*, 534 U.S. 1001 (2001), and the absence of any particularized findings or conclusions does not affect § 2254(d)'s standard of review. *Valdez v. Cockrell*, 274 F.3d 941, 951-54 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). As such, any claim intended by Bradley that is premised on the absence of state court findings of fact and conclusions of law, has no merit.

Also of no merit are Bradley's complaints about appellate counsel. While an indigent criminal defendant is entitled to appointed counsel on direct appeal, *Ross v. Moffitt*, 417 U.S. 600 (1974), *Moore v. Cockrell*, 313 F.3d 880 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003), there is no federal constitutional requirement, nor has there ever been one, that counsel be appointed to assist a defendant in either a discretionary or collateral review proceeding. In addition, there is no *federal* constitutional right requiring appointed appellate counsel to advise the defendant of the appellate outcome, or provide the defendant with a copy of the appellate brief that was filed. *See Moore*, 313 F.3d at 882 (there is no federal constitutional right to be informed of outcome on appeal). Here, despite the fact that Bradley's complaints about not receiving a copy of the appellate brief do not state a federal constitutional claim, the record shows that appellate counsel advised Bradley, in a letter dated February 25, 2014, that his conviction had been affirmed, and provided Bradley a copy of the appellate court's opinion (Document No. 14-7 at 68). Bradley has not shown that anything more was required of appellate counsel. In addition, while Bradley complains, *in general*, that appellate counsel did not raise any meritorious claims, Bradley has not shown that there were any meritorious claims to be raised on direct appeal. That is what he must do to warrant any relief on an ineffective assistance of appellate counsel claim. *Green v. Johnson*, 160 F.3d 1029,

1043 (5th Cir. 1998) ("[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available."), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989); *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001) (prejudice results if appellate counsel's "deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable.").

As for Bradley's four substantive claims, given the evidence that is in the record, as well as the absence of any evidence to support Bradley's allegations that his prior aggravated robbery conviction was reversed and reduced to a theft conviction, or that Officer Nash's search warrant affidavit was materially false, no relief is available to Bradley on the merits of his claims under § 2254(d).

### A. Sentence Enhancement with Prior Conviction

Bradley first complains about his prior conviction in cause no. 341787, alleging that his conviction of aggravated robbery in that case was overturned on appeal and reduced to theft. Bradley makes these allegations despite having pled true to the aggravated robbery enhancement allegations in the indictment, and despite offering <u>no</u> evidence to support his assertion that the aggravated robbery conviction in cause no. 341787 was reversed on appeal *and reduced to theft*.

The evidence in the record, which is all the Texas Court of Criminal Appeals had when it denied Bradley's third application for writ of habeas corpus without written order, does not support this claim. The indictment alleged, for enhancement purposes, that Bradley had two prior convictions, one for aggravated robbery in cause no. 341787 and the other for tampering with an

9

identification number in cause no. 9418687. Bradley did not, at any time prior to his sentencing or prior to the Texas Court of Appeals' decision affirming his conviction, ever allege that his prior conviction in cause no. 341787 was for theft – not aggravated robbery. In fact, at his sentencing hearing, Bradley pled true to the prior conviction of aggravated robbery in cause no. 341787, as follows:

> THE COURT: Thank you.
> All right. And, Mr. Bradley, with regards to the first enhancement paragraph alleging that you were previously convicted of the felony offense of aggravated robbery back on February the 24th of 1986 in Cause No. 341787 out of the 208th District Court of Harris County, Texas, is that true, sir, or not true?
>
> THE DEFENDANT: True.

(Document No. 13-17 at 4-5). Moreover, while there is a docket notation from November 1985 indicating that a mandate had been received reversing and remanding cause no. 341787 (Document No. 14-6 at 36), Bradley was thereafter sentenced in 1986, to fifteen years incarceration on the aggravated robbery offense in cause no. 341787. Both the indictment and the State's "Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses" (Document no. 14-6 at 29) identified the conviction in Cause No. 341787 as "aggravated robbery," with a conviction date of 1986.

Upon this record, where there is no evidence that Bradley's prior conviction in Cause No. 341787 was for theft, as opposed to aggravated robbery, the Texas Court of Criminal Appeals' rejection of this sentencing claim is not contrary to or based on an unreasonable application of clearly established federal law, and is also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding(s). Consequently, under § 2254(d), no relief

is available on this claim.[1]

### B. Motion to Suppress

In his next claim, Bradley complains about the trial court's ruling on his motion to suppress. As argued by Respondent, however, Bradley's complaints arise under the Fourth Amendment, and are not cognizable in this § 2254 proceeding. That is because, under the principle set forth in *Stone v. Powell*, 428 U.S. 465, 494 (1976), "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See also Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir.), *cert. denied*, 484 U.S. 933 (1987). The opportunity, regardless of whether it is acted upon at the state court level, is all that is required to preclude federal habeas review. *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981).

Here, the record shows that counsel filed a motion to suppress, which was premised on discrepancies between the number of the house to be searched on Sandy Street and the color of the mailbox in front of that house. The state trial court held a hearing on the motion to suppress (Document No. 13-12 at 1-15; Document No. 13-13 at 1-25), and ultimately denied it. Bradley did not challenge that ruling in his direct appeal.

Because the record shows that Bradley was afforded the *opportunity* to fully and fairly

---

[1] Bradley's seemingly related claim, that use of his prior convictions to enhance his sentence violated his federal double jeopardy rights, is frivolous. *Witte v. United States*, 515 U.S. 389, 400 (1995) ("In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."); *Woodward v. Beto*, 447 F.2d 103, 104-05 (5th Cir. 1971) ("It is a well-recognized principle in federal habeas corpus proceedings that habitual offender statutes do not violate the double jeopardy clause of the United States Constitution.").

11

litigate his Fourth Amendment claim in the state courts, that claim, in accordance with *Stone*, is not cognizable in this § 2254 proceeding

### C. Ineffective Assistance of Counsel

In his next claim, Bradley complains about his trial counsel's performance vis-a-vis the motion to suppress and the alleged falsities in the search warrant affidavit. In particular, Bradley maintains that his trial counsel: (1) should have used and relied upon photographic evidence that showed the color of the mailbox in front of 7844 Sandy Street did not match the description in the search warrant affidavit; (2) should have sought Officer Nash's search warrant affidavit through discovery; and (3) should not have conceded in argument before the trial court that the motion to suppress was "weak." Bradley also maintains that his trial counsel was ineffective for failing to focus the defense on Alexander Guidroz having possessed the cocaine found at 7844 Sandy Street. The Texas Court of Criminal Appeals, when it rejected Bradley's third state application for writ of habeas corpus without written order, rejected this ineffectiveness claim on the merits. *See Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (denial of a state application for writ of habeas corpus denotes that Texas Court of Criminal Appeals addressed and rejected the merits of an applicant's claims), *cited with approval in Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998), *cert. denied*, 526 U.S. 1041 (1999). That state court adjudication of the ineffectiveness claim is not contrary to, or based on an unreasonable application of clearly established Federal law.

The clearly established Federal Law applicable to claims of ineffective assistance of trial counsel is contained in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court determined that relief is available if a petitioner can show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687.

12

Deficiency under *Strickland* is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The

determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d). *Cullen*, 131 S.Ct. at 1403. Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788. As for *Strickland's* prejudice prong, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 131 S.Ct. at 791. Instead, the question is whether "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. *Id.* at 786. If "'fairminded jurists could disagree' on the correctness of the state court's decision," § 2254(d)(1) precludes relief. *Id.* at 786. In contrast, where there is no "possibility that fairminded jurists could disagree" and fairminded jurists would uniformly conclude that the state court's decision is contrary

to, or based on an unreasonable application of clearly established Federal law, relief is available under § 2254(d)(1). *Id.*

Here, with respect to the claims related to Bradley's motion to suppress, the record clearly shows that Bradley's trial counsel, Peter Justin, did make reference to the photographic evidence and the contents of Officer Nash's search warrant affidavit in arguing in support of the motion to suppress. *See* Pretrial Motion hearing (Document No. 13-12 at 1-15; Document No. 13-13 at 1-25). As for counsel's comments during the motion to suppress argument that his position was not strong, *see* Document No. 13-13 at 12 ("I would think the best way to speed it up, and to be honest with you, Judge, this is the motion that's brought by my client. My research has not led me to believe my motion is real strong."), Bradley has not shown that such a concession prejudiced him. In particular, no showing was made in the state habeas proceeding and no showing has been made herein that the motion to suppress had any substantive merit, or that anything counsel did during the motion to suppress hearing had any effect on the outcome.

As for Bradley's complaints about the focus of the defense, which Bradley maintains should have been on targeting Alexander Guidroz as the person who possessed the cocaine found at the Sandy Street address, the record shows that trial counsel did point out that there was a rental agreement for the Sandy Street address between Bradley and Guidroz, and that Guidroz was at the Sandy Street address at the time the warrant was executed. Trial counsel also elicited testimony from Bradley, who elected to testify, that he did not live at or use the residence at 7844 Sandy Street, and instead lived across the street at 7855 Sandy Street, that he had rented the house at 7844 Sandy Street to Alexander Guidroz, that Guidroz had provided him with an affidavit stating that everything in the 7844 Sandy Street residence belonged to him (Guidroz), and that he (Bradley) was only able to direct

15

officers to the drugs inside 7844 Sandy Street after talking to and obtaining that information from Guidroz. Upon this record, it cannot be said that counsel failed to focus the defense on Alexander Guidroz as the person in possession of the cocaine at 7844 Sandy Street. It also cannot be said that the Texas Court of Criminal Appeals' rejection of Bradley's ineffectiveness claim was, on this record, either contrary to or an unreasonable application of *Strickland.* As such, no relief is available to Bradley on any of his ineffectiveness claims under § 2254(d).

### D. Prosecutorial Misconduct

In his final claim, Bradley maintains that the prosecutor, during the grand jury proceeding, engaged in misconduct by using and relying on Officer Nash's false statements in the search warrant affidavit, and by submitting evidence of Bradley's extraneous offenses. Nether allegation raises a federal constitutional claim where, as here, Bradley was found guilty by a jury. *See United States v. McKenzie*, 678 F.2d 629 (5th Cir.) ("even in the case of the most 'egregious prosecutorial misconduct,' the indictment may be dismissed only 'upon a showing of actual prejudice to the accused.'"), *cert. denied*, 459 U.S. 1038 (1982). In addition, because there is no Supreme Court authority that would support habeas relief on a claim of prosecutorial misconduct during a grand jury proceeding, no relief is available to Bradley on this claim under § 2254(d). S*ee, e.g., Bone v. Cain*, Civil Action No. 15-6455, 2016 WL 4145792 *12 (E.D. La. June 2, 2016) ("The Supreme Court has not addressed whether a state indictment is constitutionally defective if perjured testimony was presented to the grand jury or whether any defect or misconduct in the grand jury proceeding would amount to a federal constitutional violation. . . . Thus, I therefore cannot find that denial of relief on this issue was contrary to or an unreasonable application of clearly established Supreme Court law.").

## VI.  Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Bradley on the merits of any of his claims, the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 16) be GRANTED, and that Petitioner Meria James Bradley's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 8th day of June, 2017.

Frances H. Stacy
United States Magistrate Judge